# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

**CARLOS THURMAN**                                                                         **PLAINTIFF**

**v.**                                                       **CIVIL ACTION NO. 4:24-CV-P63-JHM**

**COOKIE CREWS et al.**                                                         **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Plaintiff Carlos Thurman, a prisoner proceeding *pro se*, initiated this 42 U.S.C. § 1983 action. The complaint is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the following reasons, some claims will be dismissed, while one will be allowed to continue.

### I. STATEMENT OF CLAIMS

Plaintiff was incarcerated at Green River Correctional Complex (GRCC) at the time relevant to his complaint. He sues Kentucky Department of Corrections (KDOC) and the following in their official and individual capacities: KDOC Commissioner Cookie Crews; KDOC Ombudsmen Allyson Lambert; KDOC Classification Manager Jennifer Tracy; GRCC Warden Tim Lane; Deputy Stacy Gibson; Correctional Officer Liggett Morris; Lieutenant Ryan Anderson; Sergeant Shawn Martin; Wellpath Inc.; and Wellpath employee Brianna Capel. He alleges violations of his First, Eighth, and Fourteenth Amendment rights.

Plaintiff first alleges that in August 2023, he was approached by Defendant Morris who threatened that he would have Plaintiff placed in the Restricted Housing Unit (RHU) (segregation) and fired from his job. Plaintiff wrote Defendant Lane and filed a grievance regarding Defendant Morris's threats. According to Plaintiff, about a week after he filed his grievance and Defendant

Morris had been interviewed about it, Defendant Morris retaliated against him when he stopped and questioned Plaintiff on October 6, 2023, about whether Plaintiff had taken the cheeseburger he was eating from another inmate. Plaintiff alleges that Defendant Morris then grabbed Plaintiff's left shoulder causing an "enormous amount of pain," placed him in handcuffs, and escorted him to the office where he attempted, unsuccessfully, to have Plaintiff placed in segregation.

Plaintiff then reported to medical for left shoulder pain where he was seen by Defendant Capel. Shortly thereafter, Defendant Morris told another inmate, Yvon Utsey, that Plaintiff should not have filed a grievance. Not long after, Plaintiff was escorted to the RHU. Plaintiff states that when he entered the RHU, he was not seen by medical staff as required by KDOC policy.

Plaintiff alleges that in the RHU he was placed for "hours" in an "unsanitary shower" by Defendant Martin, who ignored his requests to use the restroom. He also states that his request to see the nurse for a bad headache was ignored. He further alleges that, while in the RHU, he had stomach pain causing him to lose weight and that his requests to see the nurse for this reason were again ignored.

Plaintiff was released from the RHU on October 9, 2023, at which time he taken to "medical." On October 12, 2023, Plaintiff told Defendant Lane that Defendant Morris had targeted and assaulted him, to which Defendant Lane responded that he had reviewed the camera footage, which had prompted him to release Plaintiff from the RHU, and dismissed two pending disciplinary reports against Plaintiff filed by Defendant Morris. Defendant Lane explained that Plaintiff would be receiving one disciplinary report from Defendant Morris. Plaintiff states that he received this "false report" on October 14, 2023.

Plaintiff alleges that at the adjustment committee disciplinary hearing on October 16, 2023, Defendant Anderson refused to allow Plaintiff to call witnesses, to view the camera footage, or to

question the reporting employee. Plaintiff also alleges that he did not waive his right to 24-hour notice for the hearing, yet Defendant Anderson lied and said he did. Plaintiff was found guilty of a category 4-15, a "major write up." On appeal after the hearing, Defendant Lane amended the charge to a category 2-2, with a penalty of canteen restriction for 180 days.

Plaintiff alleges that on October 17, 2023, without his knowledge, Defendant Gibson approved a transfer from GRCC, and in turn, the "retaliatory transfer" was approved by Defendant Tracy the next day. On October 20, 2023, Plaintiff was transferred to Little Sandy Correctional Complex (LSCC). He alleges that the fact that his transfer occurred about two weeks after he filed his grievance and that inmates have been waiting for a transfer from GRCC for months is evidence that Plaintiff's transfer was retaliatory. He further asserts that KDOC officials use a specific KDOC procedure, CPP 18.7, to retaliatorily transfer inmates and that Defendants Crews and Tracy are aware of this practice.

Plaintiff requests compensatory and punitive damages.

Plaintiff attaches several exhibits, including a grievance dated September 29, 2023, regarding Defendant Morris's threats; a statement from inmate Utsey that Defendant Morris told him on October 6, 2023, that Plaintiff should not have filed a grievance about him and that Defendant Morris was going to make it his business to put him and Plaintiff in segregation; a review of Plaintiff's grievance about having been put in the shower and not being allowed to use the restroom when requested; and a KDOC inmate transfer authorization form stating, "The GRCC Classification Committee recommends this transfer to LSCC to help with inmate population flow."

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court

determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). When determining whether a plaintiff has stated a claim upon which relief may be granted, the Court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

### *A. KDOC and official-capacity claims against state Defendants*

"[O]fficial-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). A state, its agencies, and state officials sued in their official capacities for monetary damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, Plaintiff's claim against KDOC and his official-capacity claims against Defendants who are employees of the Commonwealth of Kentucky must be dismissed for failure to state a

4

claim upon which relief may be granted.

### B. Individual-capacity claims

#### 1. Due process

Plaintiff alleges that Defendant Morris filed two false disciplinary reports, which were dismissed by Defendant Lane, as well as a third false disciplinary report charging him with a high offense category, thereby increasing the severity of the potential punishment.

A prisoner does not have a due process right to be free of false disciplinary charges. *See Upshaw v. Jones*, No. 14-2534-JDT-TMP, 2015 WL 348626, at *4 (W.D. Tenn. Jan. 26, 2015) (citing *Person v. Campbell*, 182 F.3d 918, 1999 WL 454819, at *1 (6th Cir. June 21, 1999)). Thus, Plaintiff does not state a claim for relief under § 1983 for the alleged false disciplinary reports.

Plaintiff also alleges that Defendant Anderson denied his right to due process by not being impartial, not giving him 24 hours' notice of the hearing, not allowing him to call witnesses or question the reporting employee, and by refusing to view the camera footage. However, on appeal of the determination that he was guilty, Defendant Lane reduced the category of the charge, with a "penalty of canteen restriction suspended for 180 days."

A prisoner is entitled to the protections of due process only when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995). Allegations of denied due process at a disciplinary hearing where the prisoner did not suffer the loss of good-time or sentence credits or otherwise suffer a negative effect on the duration of his sentence do not "constitute 'atypical and significant hardship[s] on [inmates] in relation to the ordinary incidents of prison life.'" *Sotherland v. Myers*, 41 F. App'x 752, 753 (6th Cir. 2002)

(quoting *Sandin*, 515 U.S. at 484). Here, Plaintiff suffered only the loss of commissary privileges, which does not give rise to a protected liberty interest. *See, e.g.*, *Jackson v. Smith*, No. 3:19-CV-01133, 2020 WL 553729, at *3 (M.D. Tenn. Feb. 4, 2020) (suffering commissary restrictions for failure to participate in treatment does not rise to the level of an atypical and significant hardship in prison life); *Payne v. Dretke*, 80 F. App'x 314, 315 (5th Cir. 2003) (per curiam) ("The penalties imposed upon Payne following his disciplinary conviction— commissary and recreation restrictions—do not implicate a liberty interest under the Due Process Clause."); *Harris v. Farley*, No. 4:11-CV-0619, 2011 WL 2472806, at *2 (N.D. Ohio June 22, 2011) ("Petitioner suffered the potential loss of visitation and commissary privileges, neither of which qualify as a protected liberty interest.").

Consequently, the Court will dismiss Plaintiff's claims related to the alleged false disciplinary reports and against Defendant Anderson.

### 2. Defendant Lambert

Plaintiff identifies Defendant Lambert as being responsible for overseeing the KDOC grievance process, but he makes no allegations against her.

Prisoners do not possess a constitutional right to a prison-grievance procedure. *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) ("All circuits to consider this issue have . . . found that there is no constitutionally protected due process right to unfettered access to prison grievance procedures."). Consequently, "there is no inherent constitutional right to an effective prison grievance procedure." *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. Oct. 30, 2003) (citing cases). "Further, if the prison provides a grievance process, violations of its procedures . . . do not rise to the level of a federal constitutional right." *Weddle v. Dunbar*, No. 1:15CV-P9-GNS, 2015 WL 2213356, at *5 (W.D. Ky. May 11, 2015) (citing *Walker*, 128 F. App'x

at 445). The Court will dismiss Plaintiff's claim against Defendant Lambert for failure to state a claim upon which relief may be granted.

### *3. Defendant Martin*

Plaintiff alleges that Defendant Martin violated his Eighth Amendment rights when he placed him in an "unsanitary shower" and refused to allow him to use the restroom for "hours."

To state an Eighth Amendment claim for deliberate indifference to health/safety, a prisoner must satisfy both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires the prisoner to allege that he was "incarcerated under conditions posing a substantial risk of serious harm." *Id*. For the subjective component, the prisoner must allege that the defendant prison officials acted with "deliberate indifference to inmate health or safety." *Id*. (citation omitted).

Here, Plaintiff fails to state an Eighth Amendment claim against Defendant Martin for placing him in an "unsanitary shower" for "hours." A prisoner's "characterization of . . . housing as 'unsanitary' does not suffice to render those accommodations unconstitutional," *Fennell v. Bonner*, No. 220CV02844JTFATC, 2021 WL 3891590, at *7 (W.D. Tenn. Aug. 31, 2021), because it "fails to state a sufficiently serious deprivation of [his] need for sanitation." *Chapple v. Franklin Cnty.*, No. 2:21-CV-5086, 2022 WL 856815, at *5 (S.D. Ohio Mar. 23, 2022), *report and recommendation adopted as modified sub nom., Chapple v. Franklin Cnty. Sheriff's Officers FCCC 1 & 2*, No. 2:21-CV-05086, 2022 WL 16734656 (S.D. Ohio Nov. 7, 2022).

Plaintiff also fails to state an Eighth Amendment claim against Defendant Martin for the temporary denial of access to a restroom. *See, e.g.*, *Thacker v. Goins*, No. 3:21-CV-362-RLJ-DCP, 2022 WL 817295, at *2 (E.D. Tenn. Mar. 16, 2022) ("Plaintiff's allegation that a Defendant . . . denied and/or ignored his multiple requests to use the restroom over the course of

7

'approximately an hour,' resulting in Plaintiff urinating on himself, fails to rise to the level of an Eighth Amendment violation.") (internal citation and footnote omitted); *Samu v. Stewart*, No. 1:10-CV-857, 2011 WL 4074781, at *2 (W.D. Mich. Sept. 13, 2011) ("Courts in this district and elsewhere have held that allegations . . . involving an isolated and temporary refusal or delay in allowing a prisoner to use the bathroom, fall short of establishing an Eighth Amendment claim."). The Court will dismiss Plaintiff's claims against Defendant Martin for failure to state a claim upon which relief may be granted.

### 3. Defendant Lane

According to Plaintiff, Defendant Lane released him from the RHU, dismissed two disciplinary reports filed by Defendant Morris, and, on appeal after the hearing, amended a disciplinary charge to a lesser category resulting in a penalty of canteen restriction for 180 days.

Even under the liberal construction afforded to *pro se* complaints, "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002); *see also Sampson v. Garrett*, 917 F.3d 880, 882 (6th Cir. 2019) ("Even a pro se prisoner must link his allegations to material facts and indicate what each defendant did to violate his rights.") (citations omitted). Nothing in the complaint shows that Defendant Lane was involved in the alleged deprivation of Plaintiff's constitutional rights as opposed to the remediation of the allegedly unconstitutional actions of other Defendants. The Court will, therefore, dismiss Plaintiff's claim against Defendant Lane for failure to state a claim.

### 4. Defendants Wellpath and Capel

Plaintiff alleges that Wellpath employee Defendant Capel failed to give him a medical examination when he entered the RHU in violation of prison policy and falsified the encounter

8

time of his medical visit for his left shoulder to "cover up not assessing Plaintiff in the RHU segregation as required by policy." He further alleges that, while in the RHU, he suffered stomach pain, lost weight, and had a headache, yet his requests to see a nurse were ignored.

First, failing to follow prison policies or regulations is not a constitutional violation because "[f]ailing to follow proper procedures is insufficient to establish an infringement of a liberty interest." *Grinter v. Knight*, 532 F.3d 567, 574 (6th Cir. 2008); *see also Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *2 (6th Cir. Mar. 31, 2017) ("[C]laims related to violations of prison policies do not state a constitutional violation[.]"). Thus, Plaintiff has not stated a claim against Defendant Capel.

Second, an Eighth Amendment claim for deliberate indifference to a serious medical need has both an objective and a subjective component. To meet the objective component, the plaintiff must show that the medical need is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Plaintiff has not stated an Eighth Amendment claim because he has not alleged a sufficiently serious medical need. Instead, he alleges only that during some or all of the brief time -- three days -- he spent in the RHU he suffered from stomach pain and a headache and lost weight. *See, e.g.*, *Sledge v. Kooi*, 564 F.3d 105 (2nd Cir. 2009) (alleged eczema, back pain, stomach disorders, allergies, and asthma did not constitute a "serious medical need" on which to premise an Eighth Amendment claim of deliberate medical indifference); *Williams v. Poborsky*, No. 3:22-CV-00242-SPB, 2024 WL 873671, at *11 (W.D. Pa. Feb. 7, 2024) ("While [stomach pains, cramps, and nausea] are certainly unpleasant, the law does not regard them as sufficiently serious to implicate the Eighth Amendment unless they are protracted or accompanied by other symptoms indicative of a serious condition."), *report and recommendation adopted*, No. CV 22-242, 2024

WL 866867 (W.D. Pa. Feb. 29, 2024); *Williams v. Coleman*, No. 1:23-CV-646, 2023 WL 4861740, at *5 (W.D. Mich. July 31, 2023) (holding that headaches typically fall into the category of a medical condition "for which an inmate may seek relief, but for which professional medical treatment is not required") (citing cases).

The Court will dismiss Plaintiff's claims against Defendants Wellpath and Capel for failure to state a claim upon which relief may be granted.

### 5. Retaliation

"Even though a prisoner has no inherent constitutional right to avoid segregated housing or prison transfers, [a prison] may not place the prisoner in segregated housing or transfer him to another prison as a means of retaliating against him for exercising his First Amendment rights." *Hill v. Lappin*, 630 F.3d 468, 473 (6th Cir. 2010). Retaliation based upon a prisoner's exercise of his constitutional rights, including the right to file a nonfrivolous grievance, violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (holding that a prisoner has a First Amendment right to file a grievance against prison officials and this right is protected if the grievance is not frivolous). To set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394.

On review, the Court will allow Plaintiff's First Amendment retaliation claim to continue against Defendant Morris for his placement in the RHU after Plaintiff filed his grievance regarding Defendant Morris's threats.

The Court will, however, dismiss Plaintiff's claim that he was transferred to LSCC as retaliation. Plaintiff alleges that on October 17, 2023, Defendant Gibson approved his transfer from GRCC, and that Defendant Tracy at the KDOC approved the "retaliatory transfer" the next day. Two days later, Plaintiff was transferred to LSCC. He alleges that the fact that his transfer occurred about two weeks after he filed his grievance and that inmates have been waiting for a transfer from GRCC for months is evidence that Plaintiff's transfer was retaliatory. He further asserts that KDOC officials use a specific KDOC procedure, CPP 18.7 to retaliatorily transfer inmates and that Defendants Crews and Tracy are aware of this practice.

Plaintiff does not address the transfer's authorization statement that the transfer was recommended to "help with inmate population flow." "Being transferred between facilities within a state prison system is a common consequence of incarceration." *Jones v. Harrell*, No. 7:21-CV-00541, 2024 WL 1258270, at *4 (W.D. Va. Mar. 22, 2024). The Sixth Circuit has held that "that a prison transfer or the threat of a transfer can be an adverse action if that transfer would result in foreseeable, negative consequences to the particular prisoner." *Hill v. Lappin*, 630 F.3d 468, 474–75 (6th Cir. 2010) (citing cases). Here, Plaintiff offers no reason that transfer to LSCC would negatively impact him. *See, e.g.*, *Stone v. Curtin*, No. 1:11-CV-820, 2011 WL 3879505, at *4 (W.D. Mich. Aug. 31, 2011) (no retaliation claim for transfer where "Plaintiff ma[d]e[] no allegation that administrative segregation at LMF was in any way different or harsher than administrative segregation at ECF or that he lost additional privileges").

Additionally, as to Defendants Crews and Tracy, the Court notes that the doctrine of *respondeat superior* does not apply in § 1983 actions to impute liability to supervisors. *Monell*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Rather, to establish supervisory liability in a § 1983

11

action, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy*, 729 F.2d at 421 (citing *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 872-74 (6th Cir. 1982)). "[L]iability of supervisory personnel must be based on more than merely the right to control employees." *Hays*, 668 F.2d at 872. "Likewise, simple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)). Supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)). Thus, Plaintiff fails to state a claim against Defendants Crews and Tracy.

The Court will dismiss Plaintiff's retaliation claim regarding his transfer to LSCC for failure to state a claim upon which relief may be granted.

### III. CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's claims against the KDOC, official-capacity claims against KDOC Defendants, due process claims, Eighth Amendment claims, and claims against Defendant Lambert and Lane are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted within the meaning of 28 U.S.C. § 1915A(b)(1).

**The Clerk of Court is DIRECTED to terminate** the Kentucky Department of Corrections, Cookie Crews, Allyson Lambert, Jennifer Tracy, Stacy Gibson, Tim Lane, Ryan Anderson, Shawn Martin, Wellpath Inc., and Brianna Capel as parties to this action.

The Court will enter a separate Service and Scheduling Order to govern the development of the remaining claim, *i.e.*, Plaintiff's individual-capacity claim against Defendant Morris for retaliation. In allowing this claim to continue, the Court expresses no opinion on its ultimate merit.

Date: December 17, 2024

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
    Defendant Morris
    Justice and Public Safety Cabinet
4414.009