UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**CARLOS THURMAN**                                                                                       **PLAINTIFF**

v.                                                                            **CIVIL ACTION NO. 4:24-CV-P63-JHM**

**COOKIE CREWS et al.**                                                                              **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

Before the Court is the motion for summary judgment filed by the sole remaining Defendant in this lawsuit, Correctional Officer Liggett Morris (DN 23). *Pro se* Plaintiff Carlos Thurman has responded (DN 28), and Defendant has replied (DN 33). The matter being ripe, the Court will grant Defendant's summary-judgment motion for the following reasons.

### I. COMPLAINT

Plaintiff, a convicted inmate housed at the Green River Correctional Complex (GRCC) at the relevant time, alleged that in August 2023, he was approached by Defendant who threatened that he would have Plaintiff placed in the Restricted Housing Unit (RHU) (segregation) and fired from his job. DN 1, PageID #: 7. Plaintiff wrote the Warden and filed a grievance regarding Defendant's threats. *Id*. According to Plaintiff, on October 6, 2023, Defendant "made good on his threat and retaliated against Plaintiff, when he pursued Plaintiff by chasing [him] down over a cheeseburger that Plaintiff was eating."[1] *Id*. Plaintiff alleged that Defendant handcuffed him, escorted him to the Unit Administrator's Office, and called the shift supervisor, Lieutenant Sonya Basting, "to try and get Plaintiff placed in segregation." *Id*. at PageID #: 8. According to Plaintiff, Lieutenant Basting asked Defendant if Plaintiff was being verbally or physically disruptive. *Id*.

---

[1] The "cheeseburger" Plaintiff refers to is also referred to as a "sandwich" and a "burger" in the record, as set forth below.

When Defendant replied that Plaintiff was not, Lieutenant Basting ordered Defendant to remove the handcuffs and release Plaintiff back to the yard. *Id.*

Later that afternoon, Defendant approached another inmate, Yvon Utsey, and asked him what he did with his food tray which had had the cheeseburger on it and then told him that Plaintiff should not have filed a grievance on him and that Utsey was not his "target." *Id.* at PageID #: 8-9. A little later, Plaintiff was taken from his dorm, placed in handcuffs, and escorted to the RHU. *Id.* at PageID #: 9. Plaintiff states that he was released from RHU on October 9, 2023, and that on October 14, 2023, he "received a [f]alse disciplinary report from Defendant [with] a higher category than what Plaintiff was accused of doing[.]" *Id.* at PageID #: 10.

In the portion of his complaint titled "Conclusion," Plaintiff states that on October 6, 2023, Defendant "went above the shift supervisor's head after she advised him to remove the handcuffs, and had Plaintiff placed in segregation hours later." *Id.* at PageID #: 12. He continues:

> On October 9, 2023, [Warden] Lane viewed the camera footage of the incidence . . . and saw where Defendant had lied. [Warden] Lane ordered the release of Plaintiff from RHU, and [Warden] Lane told Plaintiff that he dismissed two disciplinary reports that were in the computer that Defendant [] had filed. [Warden] Lane stated to Plaintiff that he viewed the footage and saw where Defendant had lied on Plaintiff and that's why [Warden] Lane released Plaintiff from RHU[] two days [later].

*Id.* (cleaned up).

Plaintiff attached several exhibits, including his grievance dated September 29, 2023, regarding Defendant's threats; portions of the disciplinary investigation of the incident on October 6, 2023; and Utsey's affidavit. DN 1-1. Utsey's affidavit avers under penalty of perjury that on October 6, 2023, he was stopped by Defendant and asked what he did with his tray. *Id.* at PageID #: 24. Utsey averred that when he asked why, Defendant replied that Plaintiff "should not

have filed a grievance on me[] and was going to make it his business to put us both in seg. (SMHU). *Id*. Then shortly later I was put in handcuffs and taken to seg along with [Plaintiff]." *Id*.

On initial review of the verified complaint, the Court allowed Plaintiff's First Amendment retaliation claim to continue against Defendant. DN 8, PageID #: 77.

## II. SUMMARY-JUDGMENT STANDARD

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). The non-moving party's evidence is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Id.* at 586. "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be

insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings, and that a party's "status as a pro se litigant does not alter" its burden of showing a genuine issue for trial. *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) (citation omitted). However, statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992); 28 U.S.C. § 1746.

### III. ANALYSIS

A First Amendment retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) . . . the adverse action was motivated at least in part by the plaintiff's protected conduct." *Berkshire v. Dahl*, 928 F.3d 520, 531 (6th Cir. 2019) (quoting *King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012)).

#### A. First Element of Retaliation Claim – Protected Conduct

The filing of a nonfrivolous grievance or lawsuit against a prison official is protected conduct. *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (citing *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)); *Cook v. Woodard*, No. 1:17-CV-532, 2019 WL 2352923, at *7 (S.D.

4

Ohio June 4, 2019) ("It is undisputed that Plaintiff has a constitutional right to file a prison grievance or a civil lawsuit without fear of retaliation.") (citing, *inter alia*, *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002), *report and recommendation adopted*, 2019 WL 4010212 (S.D. Ohio Aug. 26, 2019). Here, Defendant concedes that Plaintiff's grievance about him satisfies the first element.

### B. Second Element of Retaliation – Adverse Action

Defendant argues with regard to this element, "Even if the disciplinary charge and penalty could somehow be described as adverse conduct specifically taken by Defendant, no support is provided as to how this alleged adverse conduct could be 'capable of deterring a person of ordinary firmness.'" DN 23-1, PageID #: 126 (citing *Bell*, 308 F.3d at 606). Defendant further asserts that Plaintiff and Utsey, the other inmate involved, received the same punishment, three days in segregation, and argues that the three-day segregation period is not "adverse conduct" *by Defendant* since he was not responsible for imposing their punishment. *Id*. at PageID #: 128.

Defendant's argument is misplaced. It matters not that Defendant was not responsible for the punishment meted. *See Brown v. Crowley*, 312 F.3d 782, 789 (6th Cir. 2002) ("Although Brown was already in administrative segregation and a hearing officer ultimately found him not guilty, the issuance of the major misconduct charge subjected him to the risk of significant sanctions. . . . A reasonable jury could conclude that being subjected to the risk of such severe sanctions for raising a legitimate complaint 'would deter a person of ordinary firmness from continuing to engage in that [protected] conduct.'") (citations omitted). When deciding whether the issuance of a disciplinary charge rises to the level of an adverse action, the Sixth Circuit instructs trial courts to "look to both the punishment [the plaintiff] could have faced and the punishment he ultimately did face." *Maben*, 887 F.3d at 266 (citing *Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004)).

5

The Sixth Circuit has held that "the mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation." *Scott*, 377 F.3d at 572. Furthermore, "[P]lacing an inmate in administrative segregation could deter a person of ordinary firmness from exercising his First Amendment rights." *Herron v. Harrison*, 203 F.3d 410, 416 (6th Cir. 2000) (internal citation and quotation omitted); *see also McDaniel v. Bechard*, No. 15-13892, 2017 WL 5712898, at *4 (E.D. Mich. Nov. 28, 2017) ("Plaintiff has adequately alleged adverse action by claiming that the disciplinary charges against him caused him to be placed in segregation."). Additionally, even if disciplinary charges are ultimately dismissed, the disciplinary action is sufficient to constitute an adverse action. *See McKinney v. Napier*, No. 3:17-cv-P28-DJH, 2017 WL 2295905, at *7 (W.D. Ky. May 24, 2017) (citing *Brown*, 312 F.3d at 789).

However, simply reporting a disciplinary infraction is not adverse conduct as long as the disciplinary report is not false. *See Smith v. Craven*, 61 F. App'x 159, 162 (6th Cir. 2003) ("But of the two retaliatory acts . . . false disciplinary report and verbal harassment, only the first was an adverse action . . .."); *Loyde v. Jenkins*, No. 3:14-2311, 2015 WL 3645515, at *3 (M.D. Tenn. June 10, 2015) (filing a false disciplinary report has been found to be an adverse action), *report and recommendation adopted*, 2015 WL 4479731 (M.D. Tenn. July 21, 2015). In this case, Defendant argues that on October 6, 2023, he witnessed a violation of prison rules and reported it "as required by relevant policies and procedures for all correctional officers." DN 23-1, PageID #: 126.

In support, Defendant attaches Part I of the Disciplinary Report Form containing his narrative of the incident in which states the following. While training two officers, Officers Cameron Denny and Chris Fulkerson, Defendant saw Utsey exit the dorm with a styrofoam tray of food, prompting him to instruct the officers with him to watch Utsey because Defendant

6

suspected that Utsey was going to pass the tray to another inmate. DN 23-4, PageID #: 147. When the other officers alerted Defendant that Plaintiff had the tray, Defendant moved toward where Plaintiff was headed and radioed another officer to intercept Plaintiff. *Id*. Plaintiff had already thrown away the tray, so he ordered Plaintiff to drop the sandwich. *Id.* After Plaintiff twice refused, Defendant cuffed him. *Id*.

Part I also contains a description of Defendant's interview by Correctional Sergeant Drew Mendoza who noted that:

> Ofc. Morris stated that he witnessed inmate Utsey hand off the tray to Inmate Carlos Thurman #112192. Ofc. Morris stated that he notified Correctional Sergeant Chris Choate and asked him to stop inmate Thurman. Once stopped, Ofc. Morris stated that he discovered inmate Thurman with a sandwich that was removed from the food tray that he received from Inmate Utsey.

*Id*. (cleaned up). Mendoza also interviewed Correctional Sergeant Chris Choate who stated that he brought Plaintiff to Defendant at which time Defendant told Plaintiff to retrieve what he had thrown away and to hand over the sandwich, but Plaintiff refused. *Id*. Defendant then ordered Plaintiff twice to place his hands behind his back so he could cuff him, but Plaintiff refused both times before following orders. *Id*.

In his interview, Officer Fulkerson stated that he saw Utsey, whom he was watching at Defendant's direction, hand the tray to Plaintiff. *Id*. at PageID #: 148. After Plaintiff was intercepted, he witnessed Plaintiff refuse to retrieve the tray from the trash can as ordered by Defendant then twice refuse Defendant's orders to put the burger down. *Id*. According to Fulkerson, Defendant ordered Plaintiff to cuff up, and Plaintiff put only his left hand behind his back but not his right because he was holding the burger. *Id*.

Sergeant Walbert records that he viewed the camera footage and saw:

> Inmate Utsey pass a styrofoam tray off to Inmate Carlos Thurman # 112192 at Gate 23 at approximately 12:05 p.m. on October 6, 2023. When Inmate Thurman was

7

> stopped by Sergeant Choate in Dorm 5, Inmate Thurman was eating out of the styrofoam tray. He was not trying to throw it away and it was not empty.

*Id*. at PageID #: 155. Part I indicates that Plaintiff was initially charged with "5-03 – Eluding or resisting apprehension." *Id*. at PageID #: 149. Part I further records that, when Plaintiff was interviewed, he answered "'no comment'" when asked if he received a tray containing food from Utsey and denied being given more than one order to turn over the burger or to put his hands behind his back. *Id*. at PageID #: 148.

The Part II – Hearing/Appeal report, also attached to the summary-judgment motion, states that at the hearing Plaintiff was charged not with a "5-03," but with "4-15 Unauthorized transfer of money or property." *Id*. at PageID #: 150. He was found guilty and punished by Ryan A. Anderson, Chairman/Adjustment Officer, with 15 days of segregation, but with three-days credit for time served and twelve days suspended. *Id*.

Defendant also attaches the Part II – Hearing/Appeal report for Utsey indicating that Utsey was also charged with "4-15 Unauthorized transfer of money or property." *Id*. at PageID #: 152. He was found guilty by Lieutenant Andrew Kenyon of an amended charge of "2-02 Disruptive Behavior" and given a 30-day canteen restriction which was suspended for 180 days. *Id*. Defendant also attaches a log of bed assignments showing that both Plaintiff and Utsey remained in segregation for three days (DN 23-2) and documents related to Plaintiff's grievance (DN 23-3).

Plaintiff admits in his complaint that he was eating a cheeseburger but does not say where he obtained the cheeseburger or that he did not receive the cheeseburger from Utsey. DN 1, PageID #: 7-9. Utsey's affidavit does not deny that he handed off his food tray with the cheeseburger to Plaintiff. DN 1-1, PageID #: 24. The disciplinary report records that, when interviewed, Plaintiff answered "'no comment'" when asked if he received a tray containing food from Utsey and walked away from Defendant. DN 28-3, PageID #: 148. And the officer who watched the video reported

8

that he saw "Utsey pass a styrofoam tray off" to Plaintiff. DN 23-4, PageID #: 155. Thus, the evidence of record shows that the disciplinary report was not false as to the receipt of Utsey's tray.

Plaintiff also alleged that Defendant reported the infraction with a higher category than was warranted and took Plaintiff to RHU "*to try and get* Plaintiff placed in segregation." DN 1, PageID #: 8 (emphasis added). As made clear in the complaint, however, he was not admitted to RHU at that time; instead, he was released into the yard by order of Lieutenant Basting when Defendant informed her that Plaintiff was not verbally or physically abusive. *Id*. Later that afternoon, Plaintiff and Utsey were both placed in RHU.

Defendant's summary-judgment motion points out that, although Plaintiff asserted that "Defendant was personally responsible for assigning the inmates to RHU," he does not offer any evidence to show who was responsible for Plaintiff's placement in RHU. DN 23-1, PageID #: 130. And Plaintiff offers no reason that he would know who was responsible for his being placed in RHU. Neither is there evidence in the record as to why Utsey was taken to RHU at the same time if Defendant's intent was retaliation against Plaintiff.

The bed assignment log submitted by Defendant indicates that Plaintiff and Utsey were placed in RHU "Administrative segregation" on October 6 and released on October 9, 2023, for "Institutional need." DN 23-3, PageID #: 133-34. It does not indicate who ordered the placement into or release from RHU.

The verified complaint alleges that Defendant "went above the shift supervisor's head after she advised him to remove the handcuffs, and had Plaintiff placed in segregation hours later."

9

DN 1, PageID #: 12.  Plaintiff also makes this argument in his response[2], stating, "Defendant went above her head and got Plaintiff placed in RHU."[3]  DN 28, PageID #: 177.

"Only matters known to the declarant personally may properly be asserted in an affidavit offered in support or in opposition to a motion for summary judgment." *Colton v. Scutt*, No. 10-CV-13073, 2011 WL 6090152, at *3 (E.D. Mich. Dec. 7, 2011) (citing *Argo v. Blue Cross & Blue Shield of Kan., Inc.,* 452 F.3d 1193, 1200 (10th Cir. 2006) (striking portion of affidavit as to which the affiant had no personal knowledge).  In fact, although a plaintiff can rely on statement in a verified complaint in response to a motion for summary judgment, *King v. Harwood*, 852 F.3d 568, 577-78 (6th Cir. 2017), a "verified" complaint which fails to "distinguish between allegations based on firsthand knowledge and those based merely on information and belief . . . is not admissible evidence for summary judgment purposes." *White v. Erdos*, No. 21-3154, 2022 WL 517273, at *2 (6th Cir. Jan. 26, 2022) (citing Fed. R. Civ. P. 56(c)(4) (verified complaint "must be made on personal knowledge")); *see also El Bey v. Kehr*, No. 23-3505, 2024 WL 2977543, at *2 (6th Cir. Jan. 29, 2024) (the Sixth Circuit has upheld the exclusion of affidavits deficient for not clearly delineating admissible facts about which the plaintiff has personal knowledge); *see also Blount v. Stanley Eng'g Fastening*, 55 F.4th 504, 516 (6th Cir. 2022) (upholding district court's exclusion of an affidavit that "contain[ed] extensive hearsay and testimony about which [the affiant] had no personal knowledge, as well as testimony that contradict[ed] [the affiant's] earlier deposition").

---

[2] Plaintiff's response contains a "Verification," but it is not made under penalty of perjury.  DN 28, PageID #: 178.

[3] Defendant does not address this assertion in his reply.

10

Because Plaintiff provides no reason that he would have personal knowledge that Defendant "got Plaintiff placed in RHU," and does not appear to make the allegation based on firsthand knowledge, the Court does not consider this statement to be admissible evidence.

The Court now turns to whether Plaintiff having initially been charged with a "major report, 5-03," whereas Utsey received a minor report ("2-02"), is evidence of retaliation. Defendant argues that the difference in the initial disciplinary categories between Plaintiff and Utsey was a result of Plaintiff's "having failed to stop when ordered and refusing to drop the sandwich and cuff up when ordered. Utsey had not engaged in this conduct, and in the end, the hearing officer amended Plaintiff's charge to a 4-15 violation like Utsey's." DN 33, PageID #: 207.

The verified complaint alleged:

On October 9, 2023, [Warden] Lane viewed the camera footage of the incidence . . . and saw where Defendant had lied. [Warden] Lane ordered the release of Plaintiff from RHU[] and . . . told Plaintiff that he dismissed two disciplinary reports that were in the computer [from] Defendant [] . . . and that's why [Warden] Lane released Plaintiff from RHU[] two days [later].

DN 1, PageID #: 12 (cleaned up). However, Plaintiff does not say what "lie[s]" the Warden discovered by watching the camera footage. The only camera footage evidence in the record is in Part I where Sergeant Walbert records that he viewed the camera footage and saw "Inmate Utsey pass a styrofoam tray off to [Plaintiff] . . . . When Plaintiff was stopped by Sergeant Choate in Dorm 5, Inmate Thurman was eating out of the styrofoam tray." DN 23-4, PageID #: 155.

As for Plaintiff's statement that the Warden told him that he dismissed two disciplinary reports filed by Defendant, Plaintiff does not say what "reports" and makes no attempt to square that statement with the disciplinary report submitted which contains Defendant's narrative, dated October 6, 2023, at 4:47 p.m., DN 23-4, PageID #: 147, and the obvious fact that Defendant's charges were investigated, a hearing was held, and he was found guilty, although of a lesser charge.

11

Plaintiff's response also attempts to paint Defendant as being inconsistent on whether Plaintiff walked away from him and disobeyed his orders. He contends that Defendant's statement in his answer to the complaint that Plaintiff walked away from him despite his verbal commands cannot be true because Defendant's report of the incident did not record that Plaintiff walked away while Defendant made verbal commands. DN 28, PageID #: 177. However, Defendant's answer was *in response to Plaintiff's description of the event in his complaint*, *i.e.*, "Defendant Morris was coming out of building which is about 40 feet from where Plaintiff was housed. Plaintiff was walking towards his dorm eating a cheeseburger, when Defendant Morris started yelling, (hey! hey!). Not hearing my name being called I continued walking towards my dorm." DN 1, PageID #: 7. Thus, Plaintiff admits in his complaint that he continued walking after hearing Defendant yelling, although, according to Plaintiff, he did not realize that the yelling was directed at him. Furthermore, Plaintiff's complaint also alleged that Defendant "pursued Plaintiff by chasing [him] down." DN 1, PageID #: 7. Plaintiff's reference to having kept walking and Defendant's pursuit of him undercuts his argument.

Furthermore, the record shows that, although Defendant's narrative does not state that Plaintiff walked away, he reported in that narration that he ordered Plaintiff to drop the sandwich; and that after Plaintiff twice refused, Defendant cuffed him. DN 23-4, PageID #: 147. Choate witnessed Defendant tell Plaintiff to retrieve what he had thrown away and to hand over the sandwich, but Plaintiff refused; Defendant then ordered Plaintiff twice to place his hands behind his back so he could cuff him, but Plaintiff twice refused before following orders. *Id*. And Fulkerson stated that after Plaintiff was intercepted, he witnessed Plaintiff refuse to retrieve the tray from the trash can as ordered by Defendant, then twice refuse Defendant's orders to put the burger down. *Id*. at PageID #: 148. Also, according to Fulkerson, Defendant then ordered Plaintiff

12

to cuff up and Plaintiff put his left hand behind his back but not his right because he was holding the burger. *Id*. Plaintiff does not address these witness statements.

Plaintiff's complaint did not allege that he complied with orders given by Defendant. The investigation report records that Plaintiff denied being given more than one order to surrender the burger or put his hands behind his back. DN 23-4, PageID #: 148. But the same report records Defendant's, Choate's, and Fulkerson's statements to the contrary, and Plaintiff did not allege in his complaint or argue in his response that their statements were false.

Plaintiff also contends that the Warden's review of his appeal of the disciplinary proceeding showed that "the evidence did not warrant a violation." DN 28, PageID #: 174. However, the Warden's review of Plaintiff's appeal after the disciplinary hearing stated *in toto*: "Based on my review of your appeal and the evidence contained within the disciplinary report, I have decided to amend the charge to a 2-2 Disruptive behavior with a penalty of canteen restriction suspended for 180 days." DN 28-4. Thus, contrary to Plaintiff's argument, the Warden did not state that the evidence did not support a finding that a violation occurred.

For the foregoing reasons, the Court holds that the evidence demonstrates that the disciplinary charge of failing to comply with orders was not false. Consequently, no adverse action occurred related to that charge.

### C. Third Element of Retaliation Claim – Motivation

Even if Defendant took adverse action, if Defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment. *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999) (*en banc*); *see also Thomas v. Eby*, 481 F.3d 434, 441-42 (6th Cir. 2007) ("After a plaintiff shows that his protected conduct was

13

a motivating factor in the defendant's action, the defendant may thwart the retaliation claim by showing that it would have taken the same action even without the protected activity.").

"To establish the causal connection required by the third element, the defendants' retaliatory motive 'must be a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.'" *Spearman v. Williams*, No. 22-1309, 2023 WL 7000971, at *5 (6th Cir. July 17, 2023) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019); other citations omitted).  The Sixth Circuit has observed that "retaliation rarely can be supported with direct evidence of intent . . . . But conclusory allegations of retaliatory motive unsupported by material facts will not be sufficient to state . . . a claim under § 1983." *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (internal quotations and citations omitted). Here, Defendant argues that "no causal connection is apparent between Defendant reporting the disciplinary charge for transfer or receipt of the unauthorized item and the previous grievance Plaintiff filed" and that "no evidence, circumstantial or otherwise, has been presented that could provide any inference that Defendant's conduct was motivated by said grievance." DN 23-1, PageID #: 127.  This argument ignores Utsey's affidavit which clearly avers that Defendant told him he was motivated by retaliation. DN 28-3, PageID #: 183.

However, Defendant has shown that, absent any retaliatory intentions, he would have reported the infraction anyway. *See Cooper v. Bower*, No. 5:15-CV-249-TBR, 2017 WL 4682725, at *7 (W.D. Ky. Oct. 17, 2017) (granting summary judgment based on retaliatory transfer where defendants carried burden of showing that plaintiff's transfer would have occurred even without a retaliatory intention) (citing *Thomas*, 481 F.3d at 441) (explaining that, even "after a plaintiff shows that his protected conduct was a motivating factor in the defendant's action, the defendant may thwart the retaliation claim by showing that it would have taken the same action even without

14

the protected activity")).  The Court finds that, based on the discussion of the disciplinary report and evidence above, Defendant has established that he would have reported Plaintiff's and Utsey's unauthorized transfer and Plaintiff's refusal to obey orders regardless of his motivation given that both the transfer and disobedience was witnesses by multiple officers as set forth above.

## IV. CONCLUSION AND ORDER

Based on the foregoing,

**IT IS ORDERED** that the motion for summary judgment filed by Defendant Liggett Morris (DN 23) is **GRANTED**.

The Court will enter a separate Judgment dismissing this case.

Date: March 10, 2026

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:    Plaintiff, *pro se*
        Counsel of record
4414.009